# Duffy *versus* The City of Philadelphia.

*Lien of Registered Taxes, how affected by Sheriff's Sale in Philadelphia.*—" *Such Claims*" *in Act of March* 11*th* 1846, *construed.*

1. Under the tax laws of the city of Philadelphia, registered taxes, whether filed as *claims* or not, are " such claims" as will not " be divested by any judicial sale, as respects so much thereof as the proceeds of such sale may be insufficient to discharge and pay."

2. The expression " such claims" in the Act of March 11th 1846, is to be construed in its general or popular sense, and includes all unpaid taxes, whether registered, or registered and filed.

3. Property in the city of Philadelphia was sold at sheriff's sale August 6th 1860, and the proceeds applied to the payment of city taxes, for the years 1857 and 1858, leaving a balance yet due, which was paid by the purchaser. On case stated to determine his liability for the taxes for the year 1859, which were registered, and those of 1860, which were not, it was *Held,*

(1.) That the registered taxes for 1859, not being reached by the proceeds of the sheriff's sale, were not discharged thereby, but were a lien, and to be paid by the purchaser.

(2.) That the taxes for 1860, the current year, fell upon the property, and were payable as accruing on the ownership of it, because they were not due at the time of the sale, the period for completing the assessment had not expired, and the rate per centum was not yet fixed nor the appeal held.

Error to the District Court of *Philadelphia.*

This was an action brought to December Term 1860, by The City of Philadelphia against Francis Duffy, in which the following case was stated for the opinion of the court :—

The defendant was seised of certain premises on the north side of Locust street, below Twelfth, which were levied upon

[Duffy v. City of Philadelphia.]

under two executions upon judgments against him, and sold on the 6th day of August 1860, to a purchaser for the sum of $500, subject to a certain ground-rent. The purchaser paid the money to the sheriff, and received a deed for the premises.

The City presented to the sheriff the following claims for taxes :—

City Tax Lien Docket—Common Pleas,

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| March 1860, 199 taxes for 1857, | . | . | . | . | $101.92 |
| " " 200 " " | . | . | . | . | 252.11 |
| June " 91 " 1858, | . | . | . | . | 327.48 |

On the 13th of November 1860, the City received from the sheriff the whole of the fund in his hands, after payment of sheriff's and other costs, viz., $410, for which the following receipt was given :—

"November 13th 1860, Received of Wm. H. Kern, sheriff, $410, balance of proceeds of sale (after deducting costs), which is paid on account of city claims for taxes for years 1857 and 1858. E. POULSON, Attorney for Receiver.

"City Claim (Taxes 1857 and 1858, } $410."
March 1860, 199, 200—June 1860, 91. }

Notice was then given to the purchaser by the City that it claimed $328.90 for taxes of 1857 and 1858, the balance after receiving from the sheriff what was in his hands.

Upon examination of these claims, it was found that the whole amount of taxes for 1857 and 1858, with interest and costs, was $462.41, of which the City had received $410 from the sheriff. The purchaser then paid to the City the balance $52.41 in full of these taxes for 1857 and 1858, and the claims were satisfied.

No claims had been filed for the taxes for 1859 and 1860. Those for 1859 had been registered at the time of the sale, and those for 1860 had not been registered. The amount of these taxes is $320, being $160 for each year, besides interest.

The question for the opinion of the court is, whether the taxes for 1859 and 1860 are still a lien upon the premises, notwithstanding the sheriff's sale on the 6th of August 1860. If the court should be of opinion that the said taxes are still a lien upon the premises, then judgment to be entered for the plaintiff, the amount thereof to be settled by the parties. If the court should be of opinion that the said taxes are not a lien upon the premises, then judgment to be entered for the defendant.

Judgment was entered April 20th 1861, for the plaintiff on this case stated; whereupon the defendant removed the case to this court, on the following assignment of error :—

The court below erred in giving judgment for the plaintiff below, in the above case, instead of for the defendant below.

6 WR.—13

[Duffy *v.* City of Philadelphia.]

*Bispham* and *Rawle*, for plaintiff in error.—In furtherance of the moral principle that men should pay their debts, the laws of civilized nations generally provide for that end by subjecting the debtor's property to involuntary sale, and it is part of the scheme that the property should bring as high a price as possible, both for the sake of the creditor and of the debtor himself. This end is best secured by rendering the title of the purchaser as unembarrassed and free from encumbrance as may be: Willard *v.* Norris, 2 Rawle 56; Presbyterian Corporation *v.* Wallace, 3 Id. 109. It is submitted that the combined result of judicial decision and of legislation upon this subject is, that the purchaser takes his title clear of all encumbrances, except those which have been expressly or by necessary implication preserved by legislative enactment. Hence arise two classes of cases:—1. Those where the lien of the encumbrance retains its grasp upon the property, notwithstanding the sheriff's sale; and 2. Those where the encumbrance, being discharged by the sale, is payable out of *its* proceeds. Each of these classes is well defined. But a third and an anomalous class of cases has been rather recently introduced by the legislature, with respect to a particular kind of encumbrances, viz., *municipal claims*, which are not excepted from the second class; that is to say, not being preserved by legislation, they are discharged by the sale; and yet which, under certain circumstances, come within the first class, that is to say, although discharged by the sale, yet if the proceeds of sale are insufficient to reach them, their lien is preserved. The uncertainty thus produced to the purchaser, makes it necessary to inquire whether these statutes shall be applied to any cases which do not come strictly within their enactment. That municipal claims for curbing, paving, &c., *do* come within their enactment is not denied, and must be submitted to, but the question here is, whether the enactments also embrace current taxes, and taxes for which no claims have been filed.

The legislation on this subject may be found in the Act of 1824, February 3d, P. L.; the Act of 1845, April 16th, P. L. 488, which was supplemental to the Act of 1830; from which arose three classes of taxes: 1. Taxes which were unregistered; 2. Taxes which were registered; and, 3. Taxes which had become claims in a technical sense. In the next year was passed the Act of 1846, March 11th, P. L. 115, which preserves the lien of *such "claims"* as are mentioned in the Act.

What is meant by the words "such claims," in this act? If the word "claims" is to be used throughout in its popular sense, as meaning demands, it would include unregistered and current taxes, and the judgment of the court below would be correct. But if, as the plaintiff in error contends, the word claim is to be used in its technical sense, as a certain entry of record upon which a writ of *scire facias* can issue, it must, of course, exclude

[Duffy v. City of Philadelphia.]

everything upon which a *scire facias* cannot issue, and no one pretends that a *scire facias* can issue upon a tax-bill.

A careful study of the act will show that the legislature has used the word "claim" in both its popular and its technical sense, and has affixed certain consequences to each signification.

This Act of 1846, though necessary and proper to protect the Commonwealth and its municipal corporations, is in the highest degree stringent, and in derogation of the common law. It can have no equities within which to bring doubtful cases,—everything in it must be strictly construed. Real estate may be, and has often been swept away from its owner, who has had none but a constructive day in court, against whom the plaintiffs have extraordinary indulgences, and for whom it has left little defence. Still, this is a part of a system, which system consists in a certain high efficacy given to certain demands, when transferred from corporation books to the records of a court, and made claims in a technical sense,—which can be returned upon certificates of search by an officer appointed for the purpose, who is liable on his official bond for every omission of any such claim. This is at least some protection to owners and intended purchasers. They have none, so long as the demand rests merely upon the tax-books of a corporation.

In the cases of Pray v. Northern Liberties, 7 Casey 69, and Northern Liberties v. St. John's Church, 1 Harris 104, this court held that municipal claims (in a technical sense) for paving, &c., were not taxes, in that they did not require to be registered under the Act of 1824. It would be hard now to decide that taxes, even although unregistered, are to be clothed with all the attributes of municipal claims.

*Poulson*, for defendant in error.—The claim is for state and municipal taxes. It is a primary object with every government to protect taxes by speedy and effectual legislation. In any case of doubt, the inference would be so strong that it intended to protect that which is in its turn the means of protecting everything else, that no subtlety of construction could possibly evade the force of the conviction which that single consideration would force upon the mind.

Successive Acts of Assembly, all tending one way, show plainly that the design of our legislature has been to give to a claim of this nature all the efficacy which its importance exacts. The current of legislation and judicial decision upon the subject is too familiar to the court to require elaboration.

The question in this case divides itself—First, as to taxes for 1860, which had not been registered. It is claimed for the city that the taxes for this year stand precisely upon the same footing as the registered taxes for 1859. See the Act of 2d Feb-

[Duffy *v.* City of Philadelphia.]

ruary 1854 (Consolidation Act).   Second, as to the continuance of the lien of the taxes upon the property in the hands of the purchaser at sheriff's sale.

The argument of the plaintiff in error upon this point turns solely upon the construction to be given to the word " claims" in that section of the Act of Assembly, which provides " that the lien of such claims shall not be divested by any judicial sale as respects so much thereof as the proceeds of such sale may be insufficient to discharge and pay."   To this word "claims" he seeks to give the most confined and technical sense.   This view of the case may be opposed by the following considerations :

1. The word " claims" is used throughout the act in its popular sense.

2. The object of the act in providing for the filing of claims is to facilitate the collection of taxes and municipal charges by providing the proper machinery for the purpose.   This is still further made manifest by the fact that, by the very terms of the act, these claims are stripped of their technical character, and are made evidence of the facts set forth in them.

3. The claim is but the adjunct of the lien, and derives whatever force it has from the lien.   The lien is what is intended to be protected, having a distinct creation by Act of Assembly, and taking in the claim by virtue of its superior efficacy.   The lien exists even if no claim be filed.

4. By the Acts of Assembly providing for the registration of taxes, a peculiar species of notice is furnished to all purchasers and third parties, even if that were necessary in the case of taxes, which it is submitted is not.   They constitute likewise all that is necessary to give complete effect to the lien, as such, and their operation must be to dispense with any other public statement, or recording of the same, or we must suppose them useless and absurd.   These acts would seem still further to show that the filing of a claim is intended to be merely instrumental— a lever to put process in operation, and effect a sale.

5. If the view of the plaintiff in error be correct, the filing of claims in time to prevent enormous loss to the city, under the present system, is impracticable.   The beneficial operation of the Act of Assembly in the great majority of cases, would be lost.   How thoroughly the legislature has attempted to guard against failure of the public income from such causes is shown by the clause of the Act of Consolidation, above alluded to, providing for the continuance of the lien of taxes, even in cases where they are not registered.

The opinion of the court was delivered, April 21st 1862, by

THOMPSON, J.—The controversy in this case is about the taxes, state and city, for the years 1859 and 1860, and whether they were

[Duffy v. City of Philadelphia.]

a lien on the premises in question at the time of the sale. That occurred on the 6th of August 1860. Claims for these taxes had not been filed, and were not presented to the sheriff, as the claim for the taxes of the three preceding years were. The taxes of 1859 were registered, those of 1860 were not, and perhaps were not levied at the time. Did the sheriff's sale divest the lien of these taxes, or perhaps rather, did the purchaser take the property discharged of them? Most certainly a construction that would deprive the public of the ordinary taxes, the only means government possesses to carry on its functions, and protect the persons and property of its citizens, should spring out of some very inflexible rules, and be clearly within some exception to the general requirement that the annual taxes shall be paid. Every man knows this to be the rule, and he ought to show his exemption very clearly to escape it. This applies to purchasers as well as ordinary owners.

We are not able to see that these taxes fall within any exception, or ought to be considered as paid, in favour of the purchaser. By the Act of 1846, registered taxes remain a lien for five years from the 1st of January succeeding the year in which they are assessed. In all the sections of the act in which the subject is referred to, unpaid taxes, whether registered only, or registered and filed, are denominated " claims" for taxes. This is, we think, undoubtedly the meaning of the act, and the lien of registered taxes extending five years, comes within the saving of the sixth section, which provides that " the lien of *such claims* (those mentioned in the act, taxes, &c.) shall not be divested by any judicial sale, as respects so much thereof as the proceeds of such sale may be insufficient to discharge." We think the expression " such claims" is to be construed in its general or popular sense. No argument or reason has been presented to create a doubt of this, and it comports best with the principle of the tax laws, as well as the public interests. How otherwise can the public be protected? The city cannot be at such sales, and unless the state and city taxes be protected, by requiring the purchaser at a public sale either to bid so as to cover taxes due, or take the property subject to those remaining unpaid by his bid, these amounts must be lost, and the property of others must make up the deficiency. This would be shamefully unjust, and especially so, as a purchaser may inform himself beforehand fully as to the unpaid taxes. The registration will show him that. The taxes of the current year fall upon the property, and are payable as accruing on the ownership of it, like that of any other owner; such was the case with the taxes of 1860. They were not due when the sale took place. The period for completing the assessment had not expired. After that the rate per centum was to be fixed, and appeals held. Strictly speaking, this year's

[Duffy *v.* City of Philadelphia.]

tax accrued after the sale. We think the judgment of the District Court was entirely correct, and the judgment must be affirmed.

It is to be regretted that a more intelligent system in regard to taxation does not exist in Philadelphia. There are numerous enactments on the subject, with very many seemingly incongruous and inconsistent provisions.

*Judgment affirmed.*